UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH GILBERT,<br><br>    Petitioner,<br><br>  v.<br><br>JAMES A. YATES, warden,<br><br>    Respondent.<br>_____/ | No. C 06-3967 SI (pr)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This matter is now before the court for consideration of the merits of Joseph Gilbert's pro se petition for writ of habeas corpus. For the reasons discussed below, the petition will be denied.

## BACKGROUND

A.   <u>The Crimes</u>

On August 15, 2001, the victim, Edwin Pineda, who was affiliated with the Nortenos gang, met with Gilbert to sell him two ounces of cocaine for $1,000. At their meeting place, Gilbert and a female entered Pineda's truck. Pineda gave Gilbert the cocaine and Gilbert tossed a $20 bill at Pineda. When Pineda protested, Gilbert pulled a gun out and told Pineda to drive. Gilbert put the gun on Pineda's back while he gave Pineda directions to a hotel in Daly City.

At the hotel, Andrew Sedillo entered the truck, carrying a roll of duct tape. Sedillo told Pineda, "'Oh, you fucked up, you know, you been messing with the Surenos.'" Cal. Ct. App. Opinion, p. 2. Sedillo also told Pineda it was a 'call from the pen,' which Pineda understood to

1 mean that someone at the 'higher level' had ordered Pineda killed. Id.

2 When Sedillo told Pineda to turn off the ignition, Pineda hit the gun from Gilbert's hand and jumped out of the truck. Gilbert shot at Pineda as Pineda ran away. Pineda was shot in the back, chest and legs. Pineda reached a restaurant, where someone called the police. Pineda told the police initially that his car had been stolen by two black males because he didn't want to "snitch" and get his family involved. Pineda later told the police what really happened.

Later that day, police found Gilbert outside Pineda's apartment, in possession of a .45 semi-automatic handgun and wearing Pineda's jacket. An examination of the gun revealed that the bullets recovered from the shooting scene were fired from Gilbert's gun. Gunshot residue was found on Gilbert's hands. Sedillo's fingerprints were found on the gun's magazine and a strip of duct tape recovered from the vehicle Pineda had been driving, which had been reported stolen.

At trial, a note written by Sedillo in his jail cell was admitted into evidence. The note included Sedillo's name, prison identification number, and the circumstances surrounding Pineda's shooting. Sedillo's note identified Pineda by the tattoo he had on his left leg. The note contained statements that were used by the prosecution to show that the crimes were for the benefit of the Nortenos criminal street gang.

The defense presented evidence of Pineda's prior drug dealing and encounters with the police. The defenses of Gilbert and Sedillo focused largely on attacking Pineda's credibility.

B.   Procedural History

Gilbert and Sedillo were both charged with attempted premeditated murder, carjacking, kidnapping in the commission of carjacking, second degree burglary, assault with a semiautomatic firearm, and first degree burglary. See Cal. Pen. Code, §§ 187, 664, 215, 209.5, 211, 212.5, 245(b), 460. Gang enhancement allegations were made against both defendants. Cal. Pen. Code, § 186.22. Arming enhancements were alleged against Sedillo. Cal. Pen. Code, § 12022(a)(1). Personal use of a firearm allegations and great bodily injury allegations were made against Gilbert. See Cal. Pen. Code, §§ 12022.53, 12022.7.

2

The trial court granted the prosecution's motion to join the cases against Sedillo and Gilbert. The court also denied defendants' motion to bifurcate trial on the gang enhancement allegations. A San Mateo County jury found Sedillo and Gilbert guilty on all counts, and found true all the enhancement allegations. Sedillo was sentenced to state prison for 37 years to life and Gilbert was sentenced to 40 years to life.

The California Court of Appeal affirmed Gilbert's conviction and the California Supreme Court denied Gilbert's petition for review.

Gilbert filed his federal petition for writ of habeas corpus on March 15, 2006. He alleged that: (1) the joinder of his case with Sedillo's violated his right to due process, (2) the court's denial of his motion to bifurcate the gang enhancement allegations from the rest of the trial violated his right to due process, and (3) the imposition of a forty years to life sentence was cruel and unusual punishment prohibited by the Eighth Amendment.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in San Mateo County, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

**EXHAUSTION**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claims presented in the petition.

3

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may nor issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

**DISCUSSION**

A.   Joinder with Co-Defendant

Gilbert contends that his right to due process was violated because the trial court did not sever his trial from that of his co-defendant. The appellate court upheld the trial court's decision

4

to consolidate the cases of Gilbert and Sedillo. The appellate court stated,

> "[W]here two or more persons can be jointly tried, the fact that separate accusatory pleadings were filed shall not prevent their joint trial." ( § 1098.) The prosecutor invoked this principle when she moved to consolidate the actions against defendants for a single, joint trial. Over defendants' opposition, the trial court granted the motion. Both Sedillo and Gilbert contend this ruling was error.
>
> "A 'classic' case for joint trial is presented when defendants are charged with common crimes involving common events and victims." (People v. Keenan (1988) 46 Cal.3d 478, 499-500, 250 Cal. Rptr. 550.) The trial court's ruling may be overturned only for abuse of discretion. (E.g., People v. Koontz (2002) 27 Cal.4th 1041, 1074-1075.)
>
> This was a textbook case for consolidation. The evidence against each defendant was very strong. Gilbert arranged the meeting with Pineda and directed him to the location where Sedillo was waiting. There is nothing to suggest the meeting of Sedillo, Pineda, and Gilbert was coincidental; on the contrary, it appears that Sedillo and Gilbert coordinated beforehand that they would confront Pineda once Gilbert had brought Pineda to where Sedillo was waiting. Sedillo's fingerprint was found on the gun's magazine (as well as the duct tape he brought), but gunshot residue was found on Gilbert. Sedillo brought the gun, and used it to threaten Pineda, but it was Gilbert who fired it and kept it afterwards. In addition to the gun, items of Pineda's personal property were found on Gilbert when he was arrested.
>
> It is true, as Gilbert maintains, that the direct evidence of gang involvement was stronger against Sedillo, who wrote the jailhouse letter. It was Sedillo who first aimed the gun at Pineda and told him he had "fucked up" by "messing with the Surenos." However, the jury was instructed to consider the letter only against Sedillo, not Gilbert, and there is nothing to overcome the presumption that the jury followed this admonition. (E.g., People v. Cunningham (2001) 25 Cal.4th 926, 1014; People v. Davenport (1995) 11 Cal.4th 1171, 1210.)

Cal. Ct. App. Opinion, pp. 4-5.

      A joinder of co-defendants or counts may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process. Grisby v. Blodgett, 130 F.3d 365, 370 (9th Cir. 1997). A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not concern itself with state law governing severance or joinder in state trials. Id. at 370. Nor is it concerned with procedural right to severance afforded in federal trials. Id. Its inquiry is limited to the petitioner's right to a fair trial under the United States Constitution. To prevail, Gilbert must demonstrate that the state court's joinder or denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair. Id.; see also United States v. Lane, 474 U.S. 438, 446 n.8 (1986) ("misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right

1 to a fair trial"). Prejudice is shown if the impermissible joinder had a substantial and injurious
2 effect or influence in determining the jury's verdict. Sandoval v. Calderon, 241 F.3d 765, 772
3 (9th Cir. 2000).

4       "Antagonism between defenses or the desire of one defendant to exculpate himself by
5 inculpating a codefendant . . . is insufficient to require severance. . . . To be entitled to severance
6 on the basis of mutually antagonistic defenses, a defendant must show that the core of the
7 codefendant's defense is so irreconcilable with the core of his own defense that the acceptance
8 of the codefendant's theory by the jury precludes acquittal of the defendant." United States v.
9 Throckmorton, 87 F.3d 1069, 1072 (9th Cir. 1996), cert. denied, 519 U.S. 1132 (1997).

10       Gilbert and Sedillo did not have mutually antagonistic defenses. The opening statements
11 showed that both of their defenses centered on the jury finding that Pineda's testimony was
12 untrue. Gilbert's attorney stated, "that evidence only points to Mr. Gilbert's guilt, again, if you
13 believe Edwin Pineda." RT 138. Similarly, Sedillo's attorney stated, "Mr. Pineda is not just a
14 drug dealer and a gang member, he's a liar and a man with a motive, particularly at this point
15 with a motive to tell a story that incriminates somebody." RT 143. The same theme that Pineda
16 was a completely incredible witness was the centerpiece of each defendant's closing argument.
17 Their other closing arguments were not completely harmonious, however. Gilbert's counsel also
18 offered non-guilty explanations for the physical evidence (e.g., the gun possession, gunshot
19 residue, and presence at Pineda's home) against Gilbert. Gilbert's counsel also argued that
20 Pineda had chosen to blame Gilbert because he was young and would not pose a threat. See RT
21 1374. The closest Gilbert's counsel came to arguing adverse to Sedillo's position was to argue
22 that if the jury believed Pineda at all, Pineda was unsure who fired the shots at him but had
23 testified that Sedillo was in the truck and Sedillo's fingerprint was on the magazine of the gun.
24 See RT 1385. By contrast, Sedillo's attorney conceded Gilbert's presence at the scene of the
25 shooting and at Pineda's home, while arguing the absence of evidence that Sedillo was at either
26 place. See, e.g., RT 1396, 1419, 1429-32, 1435. Sedillo's attorney also tried to put distance
27 between Sedillo and Gilbert by conceding that Sedillo was in a gang, but Gilbert was not in the
28

gang as a way to show that the crime was not gang-related. See, e.g., RT 1400-01. Sedillo's attorney offered non-guilty explanations for the physical evidence that connected Sedillo to the crimes. Significantly, neither Gilbert nor Sedillo presented a theory that he was not guilty because the other defendant was guilty . . . not surprising because the prosecution evidence was not of a lone perpetrator, but rather was of a pair of perpetrators. Acceptance of Sedillo's theory did not preclude acquittal of Gilbert. Their defenses were not irreconcilable.

The problems that can result from joint trials were addressed and largely avoided at Gilbert's trial. The jury was instructed that the prison note was only admissible against Sedillo. RT 899; CT 272-273. The jury also was told to consider separately each defendant and to consider separately each count. RT 308-309. See Zafiro v. United States, 506 U.S. 534, 540 (U.S. 1993) (juries presumed to follow a court's limiting instructions with respect to the purposes for which evidence is admitted).

As the state appellate court noted, the evidence against each defendant was very strong. Both defendants had distinct and roughly equal roles in luring and attacking Pineda. A joint trial made sense for the kidnapping and shooting of a single victim. Both Gilbert and Sedillo were charged for the same crimes. This was not a case where the defendants each faced different charges, such that the negative impact of certain charges for a specific defendant would spill over and prejudice the other defendant's case. The joinder did not render Gilbert's trial fundamentally unfair or have a substantial and injurious effect on the jury's verdict.

The California Court of Appeal discussed only the state law claim and did not discuss the federal constitutional claim arising from the trial court's decision regarding the joinder issue. When confronted with such an unexplained decision, this court conducts an independent review of the record to determine whether the state court's decision was an unreasonable application of clearly established federal law. See Plascencia v. Alameda, 467 F.3d 1190, 1197-98 (9th Cir. 2006). Having done so, the court concludes that Gilbert is not entitled to the writ on this claim because he has not shown that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law within the meaning of 28 U.S.C. §

2254(d).

B.      Request to Bifurcate Trial on Gang Enhancement Allegations

Gilbert claims that his right to due process was violated because the trial court refused to bifurcate trial on the gang enhancement allegations from trial on the other charges. Specifically, Gilbert claims that much of the gang evidence was linked to a prison letter that his co-defendant wrote and "no evidence was presented that Petitioner was a gang member." Traverse, p. 7. The state court of appeal rejected Gilbert's claim, determining that there had not been a misjoinder under state law and Gilbert had not established there was a substantial danger of prejudice in allowing the evidence. The appellate court stated that the gang evidence was relevant during the guilt determination phase of the trial because "it provided the motive for defendants[] committing the charged offenses. The evidence was clearly material because motive is always relevant in a criminal proceeding." Cal. Ct. App. Opinion, p. 7.

A joinder of charges or a failure to separate the guilt from the sentencing phase violates due process only if the joinder was so prejudicial that the court should have ordered a separate trial. Fuller v. Roe, 182 F.3d 699, 703 (9th Cir. 1999). Also, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict to support habeas relief. Id. The admission of evidence violates due process if there are no permissible inferences the jury may draw from the evidence. Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

Despite Gilbert's assertion that "no evidence was presented that petitioner was a gang member," much of the evidence presented by Officer Andaluz, the prosecution's gang expert, was applicable to Gilbert. Andaluz gave extensive testimony regarding the Norteno and Sureno gangs of San Francisco. RT 859-984. Nortenos are associated with the number 24 and that 24th Street LNS, Locos North Side, is a subgroup of the Norteno gang and primarily claims the territory of 24th and Mission streets in San Francisco. RT 866-867. Once gang members have been "jumped" into the gang, they receive a moniker or nickname. RT 890. The 24th Street

1  LNS benefits from crimes committed by its members. RT 911-915. Members commit crimes
2  to "promote the theory or the idea that they control this area . . . it also instills fear . . . the act of
3  violence also escalates their status among the gang. It enhances prestige among other gang
4  members." RT 914. Moreover, "the more violent you are, the more you are respected.
5  Sometimes the more ruthless you are . . . you're thought of almost as a hero among the gang
6  members." RT 915. The victim, Pineda, had testified that he knew Gilbert by the nickname
7  "Moreno" from 24th Street. RT 461, 475-476.

8        Here, as the appellate court found, the gang evidence was relevant to Gilbert's motive to
9  commit the crime and the jury could have drawn the permissible inference that Gilbert attacked
10 Pineda in order to benefit the gang. The gang evidence provided an explanation why Gilbert
11 shot at Pineda after he had already taken his valuables, keys and cocaine and why the stolen
12 cocaine was returned to Pineda's residence after the shooting. This was not a case where the
13 "joinder of counts allow[ed] evidence . . . to be introduced in a trial where the evidence would
14 otherwise be inadmissible." Sandoval, 241 F.3d at 772. Gilbert has not shown he was
15 prejudiced by the failure to bifurcate because the gang evidence was highly probative at the guilt
16 determination phase of the trial. The Ninth Circuit has permitted the admission of gang evidence
17 when used to establish something other than the character of the defendant. See United States
18 v. Abel, 469 U.S. 45, 54 (1984); United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000);
19 United States v. Santiago, 46 F.3d 885, 889 (9th Cir. 1995). Gang enhancement allegations
20 differ from certain other sentence enhancement allegations, and that difference explains in large
21 part why they are less likely to warrant a separate trial. In California, "'[a] prior conviction
22 allegation relates to the defendant's status and may have no connection to the charged offense;
23 by contrast, the criminal street gang enhancement is attached to the charged offense and is, by
24 definition, inextricably intertwined with that offense.'" Cal. Ct. App. Opinion, p. 6 (quoting
25 People v. Hernandez, 33 Cal. 4th 1040, 1048-49 (Cal. 2004)). As a result, there often is less
26 need for bifurcation, but the trial court still must consider whether the evidence is so unduly
27 prejudicial that it threatens to sway the jury to convict regardless of actual guilt. Id. at 6-7.
28

Gilbert has not shown that the denial of his motion to bifurcate violated his right to due process. As with the joinder claim, the California Court of Appeal discussed only the state law claim and did not discuss the federal constitutional claim arising from the trial court's decision regarding the bifurcation of trial of the gang enhancement allegation. The state court's unexplained rejection of the claim required that this court conduct an independent review of the record to determine whether the state appellate court's decision was an unreasonable application of clearly established federal law. See Plascencia v. Alameda, 467 F.3d at 1197-98. Gilbert is not entitled to the writ on this claim because he has not shown that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law within the meaning of 28 U.S.C. § 2254(d).

C. Eighth Amendment Claim

Gilbert claims that the imposition of a 40-years-to-life sentence was cruel and unusual punishment. His theory is that his sentence was grossly disproportionate because he was a minor when he committed the crimes.

There are two types of Eighth Amendment challenges to a criminal sentence. See Harris v. Wright, 93 F.3d 581, 583 (9th Cir. 1996). A petitioner may challenge his sentence as grossly disproportionate to the crime, or he may claim that it is inconsistent with evolving standards of decency.

In rejecting Gilbert's claim, the appellate court stated,

> Courts have already held that a life sentence for attempted murder is not excessive, either by itself (e.g., People v. Villegas (2001) 92 Cal.App.4th 1217, 1230-1231; People v. Morales (1992) 5 Cal.App.4th 917, 929-931) or together with a 25-year gun use enhancement under section 12022.53 (People v. Martinez (1999) 76 Cal.App.4th 489, 493-498). Moreover, the 25 years to life maximum sentence under section 12022.53 has also survived constitutional challenge. (E.g., People v. Zepeda (2001) 87 Cal.App.4th 1183, 1212-1216; People v. Gonzales (2001) 87 Cal.App.4th 1, 16-19.)
>
> This court has noted that carjackings "involve confrontation between the perpetrator and the rightful owner. The confrontation entails great fear, serious injury, and even death. Violence and use of firearms are not uncommon." (In re Travis W. (2003) 107 Cal.App.4th 368, 375, 376.) There is no logical reason why kidnapping committed to facilitate a carjacking cannot justify a life term, when courts have readily held such a term for kidnapping is not excessive. (E.g., People v. Chacon (1995) 37 Cal.App.4th 52,

10

> 63-64; People v. Smith (1992) 18 Cal.App.4th 1192, 1197, fn. 5; In re Maston (1973) 33 Cal. App. 3d 559, 561-565, 109 Cal. Rptr. 164.)
>
> In order to prevail, Gilbert would have to carry the very substantial burden of demonstrating that these sentences shock the conscience and offend society's fundamental beliefs. (E.g., In re Lynch, supra, 8 Cal.3d 410, 424.) In reviewing this claim it is appropriate to consider the nature of the offense and the degree of danger to society. (Ibid.; People v. Weddle (1991) 1 Cal.App.4th 1190, 1195-1196.) The evidence showed that, for the benefit of a criminal street gang, Gilbert was the triggerman in a brutal kidnapping and premeditated attempted murder. He was a full participant in what was plainly meant to be a cold-blooded ambush killing. Society is clearly endangered by public shootings with semiautomatic weapons. These cold realities are not nullified because Gilbert was a minor at the time; there was no evidence that he was unusually immature, either emotionally or intellectually, as was the 17-year-old in People v. Dillon (1983) 34 Cal.3d 441, 194 Cal. Rptr. 390. The judicial conscience has not been shocked at life sentences for minors committing violent felonies. (See, e.g., People v. Felix (2002) 108 Cal.App.4th 994, 1001; People v. Gonzales, supra, 87 Cal.App.4th 1, 17.)
>
> As for the federal component of Gilbert's contention, in 2003 the United States Supreme Court held that that it was not cruel and unusual punishment to impose life sentences for a person who stole $ 84.70 of videotapes and $ 399 of golf clubs (Lockyer v. Andrade (2003) 538 U.S. 63, 66, 155 L. Ed. 2d 144; Ewing v. California (2003) 538 U.S. 11, 155 L. Ed. 2d 108). Granted, these were third strike sentences, while Gilbert has no prior convictions. On the other hand, Gilbert was not sentenced for a single offense, but a number of serious and violent crimes. Having concluded that Gilbert's life sentences do not offend the California Constitution's prohibition against cruel or unusual punishment, it follows that the sentences do not run afoul of the stricter federal prohibition against cruel and unusual punishment.

Cal. Ct. App. Opinion, pp. 8-9.

The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime. Ewing v. California, 538 U.S.11, 24-25 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)). Outside the context of capital punishment, successful challenges to the proportionality of particular sentences are rare. Solem v. Helm, 463 U.S. 277, 289 (1983).

As the state appellate court mentioned, the United States Supreme Court has held that it is not cruel and unusual punishment to impose life sentences for recidivists with current shoplifting offenses. The Supreme Court has also held that it is not cruel and unusual punishment to sentence a one-time offender to mandatory life imprisonment without parole for possessing 672 grams of cocaine. Harmelin, 501 U.S. 957, 1009 (1991). Here, Gilbert kidnapped and shot a person for the benefit of a criminal street gang. He was convicted of six

counts and sentenced to forty years to life. Unlike the defendant in Harmelin, Gilbert will be eligible for parole. Based on the severity of Gilbert's convictions, his sentence was not grossly disproportionate to the crime.

The crux of Gilbert's argument, however, rests on the fact that he was 17 years old at the time he committed the crimes. Specifically, Gilbert points to his sentencing hearing where various people testified to his potential to be rehabilitated. In essence, Gilbert argues that his sentence was grossly disproportionate not because his crimes were not serious, but because of his limited culpability as a 17 year-old.

The Ninth Circuit in Harris v. Wright, 93 F.3d 581, 584 (9th Cir. 1996), specifically rejected such an argument and held that the imposition of life sentence without parole for a 15 year old murderer was not grossly disproportionate. The court stated,

> [C]apital punishment aside, there's no constitutional (or rational) basis for classifying punishment in distinct, ordinal categories. As the Supreme Court noted in Harmelin, 501 U.S. at 996, if we put mandatory life imprisonment without parole into a unique constitutional category, we'll be hard pressed to distinguish mandatory life with parole; the latter is nearly indistinguishable from a very long, mandatory term of years; and that, in turn, is hard to distinguish from shorter terms. Youth has no obvious bearing on this problem: If we can discern no clear line for adults, neither can we for youths. Accordingly, while capital punishment is unique and must be treated specially, mandatory life imprisonment without parole is, for young and old alike, only an outlying point on the continuum of prison sentences.

Harris, 93 F.3d at 584-85. Similarly, life imprisonment in Gilbert's case is not grossly disproportionate simply because he committed the crime when he was 17 years old.

Evolving standards of decency also do not preclude the imposition of life imprisonment for a prisoner who committed the crime while he was a minor. Evolving standards of decency should be informed by objective factors to the maximum possible extent. Atkins v. Virginia, 536 U.S. 304, 312 (2002). The clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures. Id. at 311-312. However, the court must also bring its own judgment to the case by asking "whether there is a reason to disagree with the judgment reached by the citizenry and its legislators." Id. at 313.

In 2005, the United States Supreme Court recognized that a majority of states rejected the imposition of the death penalty for offenders under 18 and that evolving standards of decency

required the prohibition of the death penalty for minors. Roper v. Simmons, 543 U.S. 551, 568 (2005). Roper overruled Stanford v. Kentucky, 492 U.S. 361 (1989), which had allowed capital punishment for minors. The Roper Court recognized, "[t]o the extent Stanford was based on review of the objective indicia of consensus that obtained in 1989, it suffices to note that those indicia have changed." Roper, 543 U.S. at 574. The trend towards forbidding capital punishment in other contexts (see Atkins v. Virginia, 536 U.S. 304 (2002) (execution of mentally retarded offenders constitutes cruel and unusual punishment)) and the increased knowledge regarding a juvenile's culpability and immaturity, led to the Court's decision that common standards of decency no longer permitted the execution of juveniles. Id. at 569-74.

When Gilbert committed his crimes in 2001, Roper did not exist and Stanford was still the law. If the death penalty did not constitute cruel and unusual punishment for minors, neither did life imprisonment. Indeed, the Ninth Circuit in Harris found that the imposition of life imprisonment for a minor did not offend evolving standards of decency. Harris, 93 F.3d at 583-84. Even if Roper had existed at the time the California courts considered Gilbert's claim, it would not have required relief because Roper specifically recognized that the death penalty receives special consideration under the Eighth Amendment. Roper, 543 U.S. at 568. The state court's determination that Gilbert's sentence did not violate the Eighth Amendment is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED: March 12, 2007

SUSAN ILLSTON
United States District Judge